GEORGE C. CARTER, Respondent, *v.* EMILY P. BECKWITH et al., as Administrators, etc., Appellants.

One who has been judicially determined to be a lunatic and for whom a committee has been appointed is incapable of entering into a contract, and any contract he assumes to make is absolutely void.

The presumption of the continuance of the lunacy is conclusive as to all dealings with the lunatic after the inquisition and until it has been superseded.

The court has power, on an application to supersede the commission, where reasonable grounds appear, to inquire whether the lunacy still continues, and even in a doubtful case to direct the inquiry; it may also, *in its discretion*, make the reasonable costs and expenses a charge upon the lunatic's estate, and this, although the traverse prove unsuccessful.

*It seems*, that during the existence of the commission, the jurisdiction to award costs and expenses may only be invoked on petition or motion.

As, however, upon the death of the lunatic the power of the committee *ipso facto* terminates and his real and personal property passes in the same manner as if he had been of sound mind and memory, the jurisdiction of the court to summarily administer his estate then ceases and all claims against the estate, including claims for such costs and expenses, must be adjusted and settled in the ordinary course of administration.

Plaintiff, an attorney, upon the request of B., defendants' intestate, who had been adjudged a lunatic and for whom a committee had been appointed, instituted a proceeding to supersede the commission, and to have restored to him possession and control of his property. The court, after a full hearing, ordered a reference to inquire as to the continued insanity of the petitioner; the proceedings resulted in a determination that the lunacy still continued. After the death of B., plaintiff presented to the administrators a claim for his services, and upon rejection thereof brought this action to recover the same. *Held*, that it appearing and having been found that plaintiff instituted the proceedings in good faith and that there was probable cause, the action was maintainable.

During the life-time of B. plaintiff instituted proceedings by petition for an allowance. The matter was referred and the report of the referee in plaintiff's favor was confirmed by the Special Term, and an order made directing B.'s committee to pay plaintiff out of the lunatic's estate the sum awarded. An appeal was taken to the General Term, which was argued before the death of B., but was not decided until afterwards. The General Term reversed the order appealed from and vacated the reference, but did not deny the original application; the order of reversal was entered as of a date anterior to B.'s death. *Held*, that the question as to plaintiff's right to compensation was not rendered *res adjudicata* by the decision of the General Term, as that decis-

ion may have proceeded on grounds entirely consistent with plaintiff's claim to some compensation.

The General Term directed a reduction of the judgment and an affirmance for the reduced amount, if plaintiff consented to the reduction, which he did. *Held,* that of this defendants could not complain.

(Argued June 19, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 1, 1890, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Lansing* for appellant. The alleged contract by which the plaintiff was retained by the defendant's intestate having been made subsequently to the intestate having been judicially declared a lunatic and the appointment of a committee of his person and estate, was absolutely void. (*Fitzhugh* v. *Wilcox,* 12 Barb. 235–237; *Wadsworth* v. *Sherman,* 14 id. 169; 8 N. Y. 388; *In re Beckwith,* 3 Hun, 443–445; *Lewis* v. *Jones,* 50 Barb. 645–649; *L'Amoreaux* v. *Crosby,* 2 Paige, 422–427; *In re Burr,* 5 Barb. Ch. 208; *Hughes* v. *Jones,* 116 N. Y. 67–73.) After inquisition found, the care and custody of the lunatic's estate was vested in the Supreme Court by which the defendant's intestate was declared a lunatic, and whether any and if any and what costs and disbursements should be allowed the plaintiff, assuming to act for the lunatic, upon an unsuccessful attempt to take the lunatic and his property from the care and custody of the court, presented a question to be determined by the court in its discretion, upon the application of the claimant or otherwise. (*In re Folger,* 4 Johns. Ch. 169; *In re McLean,* 6 id. 440; *In re Tracy,* 1 Paige, 580–583; *In re Van Cott,* Id. 489; *In re Conklin,* 8 id. 450; *In re Beckwith,* 3 Hun, 443–448; 87 N. Y. 503–507; *In re Otis,* 101 id. 580–583.) The order entered is conclusive upon the plaintiff in this action. It is *res adjudicata* that the plaintiff is not entitled to anything for his

services and disbursements on the application he made to supersede the commission. (*Demorest* v. *Dorg*, 32 N. Y. 281, 290; *Embury* v. *Connor*, 3 id. 511–522; *Doty* v. *Brown*, 4 id. 71–73; *Castle* v. *Noyes*, 14 id. 329, 331; *White* v. *Coatsworth*, 6 id. 137, 139; *Ethredge* v. *Osborn*, 12 Wend. 399, 402; *Supervisors, etc.*, v. *Briggs*, 2 Den. 26, 33; *In re Beckwith*, 3 Hun, 443; 87 N. Y. 503; 90 id. 667; *Carter* v. *Beckwith*, 82 id. 83.) If the plaintiff was entitled to recover in this action the amount of the recovery would not be more than the amount which would be taxed in a suit, and such disbursements as would be taxable to a successful party in an action. (*In re Conklin*, 8 Paige, 450.) The proceedings were not for the benefit of the lunatic or his estate. (*In re Tracy*, 1 Paige, 580; *In re Beckwith*, 87 N. Y. 507; *H. Ins. Co.* v. *Tomlinson*, 58 id. 215, 216; *Fleischmann* v. *Bennett*, 79 id. 579–582; *F. L. & T. Co.* v. *B., etc., T. Co.* 109 id. 342, 344; *Gorham* v. *Innis*, 115 id. 87–93.) The facts in the paper headed request to find under section 1023 of the Code, cannot be considered. (*Nobis* v. *Pollock*, 17 Civ. Pro. Rep. 243; *Graff* v. *Ross*, 47 Hun, 152; *Harris* v. *Van Wert*, 96 N. Y. 642.) The General Term had no right to modify the judgment by reducing the amount of the recovery as was done in this case. (*Cassin* v. *Delany*, 38 N. Y. 178–181; *Whitehead* v. *Kennedy*, 69 id. 462–468; *Holmes* v. *Jones*, 121 id. 461–467.)

*P. C. J. DeAngelis* for respondent. Upon the death of Mr. Beckwith the power of his committee ceased, and his property was to be administered and disposed of as if the committee had not been appointed. (Laws of 1865, chap. 724; Code Civ. Pro. § 2344; *In re Beckwith*, 87 N. Y. 503, 508.) The proceedings in which the application of plaintiff for costs, etc., was made, abated. (87 N. Y. 508.) A lunatic after the appointment of a committee, may employ (as far as he can be said to exercise volition on the subject) an attorney to aid him in proceedings to supersede the commission of lunacy, and, although the proceedings fail, and the lunatic dies, his estate

is liable for the value of the services and disbursements of the attorney, subject to this: if anything fraudulent or unfair, or frivolous or litigious appear to have taken place on the part of the attorney, the court may say that no debt arises. (*Wentworth* v. *Tubb*, 2 Y. & C. [21 Eng. Ch.] 537; *Brockwell* v. *Bullock*, L. R. [22 Q. B. Div.] 567; *Rhodes* v. *Rhodes*, L. R. [44 Ch. Div.] 94; *In re Beckwith*, 3 Hun, 443, 446; *In re Otis*, 101 N. Y. 580; *Pharis* v. *Gere*, 110 id. 336; *Wadsworth* v. *Sharpsteen*, 8 id. 388, 392; *Lewis* v. *Jones*, 50 Barb. 645; *Barnes* v. *Hathaway*, 66 id. 452, 456, 457; *Ingraham* v. *Baldwin*, 9 N. Y. 45, 48.) The court having the custody, care and control of the lunatic's estate, has the right, in its discretion, to give the attorney for the lunatic costs payable out of the estate upon an unsuccessful attempt to supersede the commission. (*In re Tracy*, 1 Paige, 582; *In re McLean*, 6 Johns. Ch. 440.) The doctrine of *stare decisis* has no application. (*Ernst* v. *H. R. R. R. Co.*, 35 N. Y. 42.) There is no former adjudication in bar. (Code Civ. Pro. § 1317; Code Pro. § 330; *Riggs* v. *Pursell*, 74 N. Y. 370; *S. S. Bank* v. *S. C. & N. Y. R. R. Co.*, 88 id. 116; *In re Moore*, 67 id. 555.) The Statute of Limitations is not a defense in this action. (Code Civ. Pro. §§ 382, 403.) The claim was not barred by the Statute of Limitations of rejected claims. (Code Civ. Pro. § 1822.)

ANDREWS, J. The judgment recovered in this action is founded upon a claim for services rendered by the plaintiff, an attorney, upon the request of the intestate, in the prosecution of proceedings in the Supreme Court, instituted in 1871, to supersede a commission of lunacy issued against the intestate in 1855, and to have restored to him the possession and control of his property. The proceedings failed in their object, it having been determined that the lunacy still continued. The lunatic died in 1875, and the plaintiff presented to his administrators a claim for his services, which claim was rejected by them, whereupon this action was brought.

The main question in the case is whether, under the circumstances, a liability was created in favor of the plaintiff for the

value of the plaintiff's services, enforceable in an action against the estate of the deceased lunatic. It is clear, under the decisions, that the plaintiff cannot maintain the action on the theory of a contract with the lunatic to pay for the services arising out of an employment by the lunatic. The law is well settled that a lunatic whose lunacy has been judicially determined and for whom a committee had been appointed, is incapable of entering into any contract, and that any contract which he may assume to make while in that situation, is absolutely void. (*Wadsworth* v. *Sharpsteen*, 8 N. Y. 388; *L'Amoreaux* v. *Crosby*, 2 Paige, 422; *Hughes* v. *Jones*, 116 N. Y. 67.)

The court will not inquire whether the lunacy in fact continued and existed when the contract was made. The presumption of its continuance is conclusive as to all dealings after the inquisition until it has been superseded. The court on the finding of an inquisition establishing lunacy, is vested with jurisdiction over the person of the lunatic and assumes the custody and control of his estate, which it manages through the committee appointed in the proceedings, as its bailiff or agent, and although the title of the lunatic to his property is not divested by the proceedings, he can no longer buy or sell, or enter into any contract or dealing binding him or his estate. (*People ex rel. Smith* v. *Commissioners, etc.*, 100 N. Y. 215; *In re Otis*, 101 id. 580.) The incapacity of a lunatic whose lunacy has been judicially ascertained in lunacy proceedings to bind himself, does not relieve his estate from debts or liabilities incurred anterior to the lunacy. But he cannot be sued without permission of the court, except at the peril of the party prosecuting, of having his action restrained and of being adjudged in contempt. (*In re Heller*, 3 Paige, 199; *In re Hopper*, 5 id. 489. See also *Crippen* v. *Culver*, 13 Barb. 424.) The court as incident to its jurisdiction in lunacy, administers the estate of an adjudged lunatic for the protection of creditors, and will apply it to the payment of his debts, the expenses of support and maintenance of the lunatic and his family, and the satisfaction of all obligations, charges and

expenses which legally or equitably ought to be satisfied out of his property.

The question as to the allowance of costs in lunacy proceedings has been several times before our courts. It has been the usual practice to allow to the petitioner for a commission, the costs and expenses of proceedings in lunacy out of the estate of the lunatic, where they have resulted in the appointment of a committee. Rule 85 of the Supreme Court, authorizes the committee to pay such costs and expenses without the order of the court, where they do not exceed $50, but if they exceed that sum, payment cannot be made without the special order of the court. It was said by the chancellor in the case *In re Giles* (11 Paige, 638), that if the petitioner fails to establish the lunacy, he must bear his own costs, but that he will not be charged with costs if he proceeded in good faith and upon probable cause. To the same effect on the last point is the remark of Chanceller KENT in *Brower* v. *Fisher* (4 Jo. Ch. 441). The English rule seems to be less stringent, and costs will be allowed to the petitioner, although the alleged lunatic be found by the inquisition to be of sound mind. (*Nelson* v. *Duncombe*, 9 Beav. 211.) It was held in *Matter of Conklin* (8 Paige, 450), that a solicitor who unsuccessfully opposes a commission of lunacy, has no legal claim on ground of contract for his services, but that the court may in its discretion allow the solicitor his taxable costs out of the lunatic's estate, where the circumstances are such that the chancellor, if applied to, would have sustained or directed the opposition ; and a small allowance was made in that case.

The question here relates to the right of an attorney to recover compensation out of the estate of a lunatic for services rendered in an unsuccessful attempt to procure a supersedeas of a commission, and where the inquiry was expressly sanctioned by the court. The statute provides that in case any lunatic, against whom an inquisition has been found, shall be restored to his right mind and become capable of conducting his affairs, his real and personal estate shall be restored to him. (2 Rev. St. 55, § 24.) The statute is simply declarative of the

common law. Upon the application of a lunatic to set aside the commission, the court may, in its discretion, deny the application, and will do so where the case is plain, or it may allow the lunatic to traverse the inquisition, or order a feigned issue to try the question of his present sanity. (*In re M'Clean*, 6 Jo. Ch. 440; *In re Tracy*, 1 Paige, 580.) In the case first cited the court at first denied the application, but subsequently, on the application being renewed, directed a feigned issue. The question whether an allowance should be made to the person prosecuting the traverse, out of the estate of the lunatic, or whether he should be charged with costs in case of an unsuccessful traverse, has been variously ruled, depending upon the special circumstances of the particular case. In the *Matter of Tracy* (*supra*), the case of an habitual drunkard, upon an application made in his behalf, to be permitted to traverse the inquisition, and that a reasonable amount for the expenses of the traverse might be paid out of his estate, an issue was granted, and "as the property was large and the party had not had an opportunity to be heard on the taking of the inquisition," an allowance was made out of the estate of the petitioner to defray the necessary expenses on his part. In *Folger's Case* (4 Jo. Ch. 169), the costs of an unsuccessful traverse was charged upon a third party, at whose instance and for whose benefit the issue was awarded. In the *Matter of Van Cott* (1 Paige, 489), the application of a solicitor for an habitual drunkard, who had procured leave to traverse the inquisition, for an allowance of costs of an unsuccessful traverse out of the estate of the party against whom the inquisition was found, was denied for the reason that the solicitor had a personal interest to set aside the proceedings. But the court, in denying the application, affirmed the doctrine that the allowance in such a case was discretionary, saying, "It depends on the character of the application and the conduct of the party." In *Matter of M'Clean* (*supra*), the chancellor permitted the lunatic to traverse the inquisition, but decided that it should not be done at the expense of the estate. The estate was small and necessary for the support of the lunatic

and his family, and the application appeared to the chancellor to be groundless.

The cases show, we think, that no hard and fast rule has been established in this state, concerning allowance to the defeated party or his attorney, of the costs and expenses of an unsuccessful traverse of an inquisition of lunacy. Where the proceeding is clearly groundless, or vexatious, and is supported by no probable cause, or is instituted in bad faith, or for the benefit of a third party, clearly no costs should be allowed. But as this exercise of the jurisdiction of the court to deprive a person of his liberty and property on the ground of lunacy, however necessary, is, nevertheless, the exercise of a supreme power, and should be surrounded by all reasonable safeguards to prevent mistake or fraud, so, also, where upon a case presented after inquisition, there is reasonable ground to inquire whether the lunacy still continues, it is highly important for the protection of the rights of the party that he should be afforded all reasonable facilities for the prosecution of the inquiry, and it cannot, we think, be doubted that the court has the power on an application to supersede the commission, where it is convinced that there is probable cause, or even, in a doubtful case, to make the reasonable costs and expenses of the traverse a charge upon the lunatic's estate, and this although the traverse prove unsuccessful. Unless this power exists, the direction of the statute that on the restoration of reason and the capacity of the lunatic to conduct his affairs, his real and personal estate shall be restored to him, would, in some cases, afford but a barren protection. The language of the chancellor in 1 Paige, 582, commends itself for its wisdom and equity. "In every case of this kind," he remarks, "the court must exercise a sound discretion, regulated by the particular circumstances, so that while the party proceeded against is not deprived of the means of protecting his legal rights, the property which is necessary for the support of himself and family shall not be unnecessarily wasted in fruitless litigation."

The further question arises, as to the nature of the claim

and as to the means of enforcing it in the case of an unsuc-
cessful traverse, but where the circumstances equitably entitle
the expenses of the traverse to be charged upon the lunatic's
estate. There can be no doubt we think that during the pen-
dency of the commission the question whether the costs of an
unsuccessful traverse shall be allowed out of the estate of a
lunatic, is one exclusively within the cognizance of the court
having jurisdiction of the lunatic and his estate, and that its
jurisdiction to award costs and expenses can only be invoked
on petition or motion. This results from the settled practice
in such cases, the fact that the court has custody of the person
and estate of the lunatic, and as incident to its control the
power to administer the estate for the purpose of satisfying all
just and equitable charges thereon, created either before or
after the finding of the inquisition and the policy of prevent-
ing unnecessary litigation, whereby the estate may be wasted.
It is a summary, convenient and inexpensive method of deter-
mining the right in each particular case. But on the death
of a lunatic who is under a commission, the power of the
committee *ipso facto* terminates and his real and personal
property, if he dies intestate, descends to his heirs and personal
representatives in the same manner as if he had been of sound
mind and memory. (2 Rev. St. 55, § 24.) There is no longer
any necessity that the court should exercise a summary juris-
diction in administering the lunatic's estate for the payment
of debts or charges, and there seems to be no good reason why
any claim thereon, legal or equitable, should not thereafter be
adjusted and settled in the ordinary course of administration,
as in other cases.

In the present case the plaintiff, during the life of the luna-
tic, applied· to the court by petition for an· allowance out of
his estate for his services in the proceedings to supersede the
commission. The court ordered a reference and the referee
reported that a certain sum ought to be allowed. The report
was confirmed by the Special Term, and by its order the com-
mittee was directed to pay to the petitioner out of the lunatic's
estate the sum awarded. The General Term, on the appeal of

the committee, reversed the order of confirmation and vacated the order of reference. The appeal to the General Term was argued and submitted before the death of the lunatic, but the decision was not rendered until after his death, but the order of reversal was entered as of a date anterior to his death. We have held that the proceeding abated by the death of the lunatic and could not be revived. (*In re Beckwith*, 87 N. Y. 504.)

It is insisted by the administrators that no action can be maintained against them by the plaintiff for his services. There was, they insist, no contract and consequently no debt owing by the intestate, and that the plaintiff's only remedy was in an application to the court; that any allowance in such a case is purely discretionary, and that the rendition of services in proceedings to supersede a commission of lunacy, which failed, creates no liability and cannot be made the foundation of any legal claim against the estate of the lunatic after his death. That there was no contract between the lunatic and the plaintiff in the ordinary sense must be admitted. He was incapable of entering into any contract whatever. There can be no mutual assent of minds, which is essential to a voluntary contract, where one of the parties is deprived of reason, and this was the situation of the intestate when the alleged retainer was made, as was conclusively established by the inquisition. The courts do enforce in some cases, on equitable grounds, the acts and contracts of lunatics made before the lunacy has been formally established, where the other party has acted in good faith without notice. (*Mutual Life Ins. Co.* v. *Hunt*, 79 N. Y. 541.) We need not here inquire as to the extent and limitation of this doctrine. But in this case the plaintiff had notice, and the point is whether the law may not imply an obligation enforceable as a claim against a lunatic's estate after his death to pay for services rendered in an unsuccessful application on his part to get rid of an inquisition where the proceedings were fair and not vexatious or groundless, and were founded upon probable cause. This doctrine is sustained by the English courts. (*Wentworth* v. *Tubb*, 1 Younge & C. 171; *S. C.*, 2 id. 537; *Williams* v. *Wentworth*, 5 Beav. 325; *Brockwell* v.

*Bullock*, L. R. [22. Q. B. Div.] 567; *Rhodes* v. *Rhodes*, L. R. [44 Ch. Div.] 94.) In *Wentworth* v. *Tubb* the question arose on an exception to the master's report, by which a certain sum of money was appropriated from the estate of a deceased lunatic to his solicitor for the costs of an unsuccessful traverse to an inquisition. It was held by the vice-chancellor (Sir J. L. KNIGHT BRUCE) that the costs in such cases were chargeable as a debt against the estate, but he stated the qualification, "subject to this, that if anything fraudulent or unfair, or perhaps I may go so far as to say frivolous or litigious, appear to have taken place on the part of the solicitor, the court may say no debt arises." This ruling we think places the matter upon a reasonable basis. On the one hand it affords no inducement for mere wasteful or groundless litigation, and on the other it enables a lunatic, where the court is of the opinion that reasonable grounds exist for an inquiry as to his continued sanity, to procure necessary assistance in prosecuting it. The court, while it has the control and custody of the lunatic and his estate, may, as we have seen, authorize expenditures to be made in such a case. By the death of the lunatic the possession of his estate is vested in his legal representatives, and the jurisdiction of the court thereafter summarily to administer the estate which before existed ceases. (See *Sherwood* v. *Sanderson*, 19 Ves. 280; *Williams* v. *Wentworth*, *supra*.) There is certainly no reason why the accident of death occurring before the power of the court to settle the question of allowance to an attorney, has been definitively invoked, should cut him off from subsequently claiming compensation from the estate and from the right to have the claim determined upon equitable grounds. We think, therefore, the present action is maintainable.

We are concluded by the findings of the referee, which have been affirmed by the General Term, from reviewing the question of good faith of the plaintiff in instituting the proceedings, and of probable cause. The court, on a full hearing on the part of the petitioner, and of the committee and his relatives, ordered a reference to inquire as to the continued sanity

of the petitioner, thereby giving its sanction to the investigation. It appears that the lunatic had a very considerable estate. He was affected with some delusions which were not disclosed in ordinary conversation; was permitted for years before the investigation to visit his friends in the city of Utica, attend dinners, entertainments, etc., without restraint from the asylum authorities, and that he was regarded by many of his friends and acquaintances as sane. Upon the facts proved and found we think a case was made which authorized a recovery in the action, and that the judgment should be affirmed.

The point that the question of the right of the plaintiff to compensation was *res adjudicata* by the decision of the General Term reversing the order entered upon the report of the referee in the proceedings taken by the plaintiff before the death of the lunatic to procure compensation is not well founded. The order of the General Term reversed the order of the Special Term and vacated the reference, but did not deny the original application. The decision of the General Term may have proceeded on grounds entirely consistent with the claim of the plaintiff to some compensation, as, for example, that the allowance made was excessive. It is incumbent on a party claiming an estoppel to make out a clear case, and it cannot be sustained by doubtful inferences, or where the record is capable of a construction consistent with the subsequent claim.

The point that the General Term could not direct a reduction of the judgment and an affirmance for the reduced amount if the plaintiff consented to the reduction is also untenable. There was no conflict as to the value of the services on the trial. The General Term, somewhat arbitrarily we think, reduced the recovery, and of this the defendants have no reason to complain.

These views lead to an affirmance of the judgment, but, under the circumstances, without costs to either party in this court.

All concur, except O'BRIEN, J., dissenting.

Judgment affirmed.