### In re HARDY et al.

(Supreme Court, Appellate Division, First Department. February 11, 1898.)

1. INSANE PERSONS—INQUISITIONS—COUNSEL FEES—JURISDICTION.

Code Civ. Proc. § 2336, provides that, when a committee is appointed for a person adjudged insane, "the court must direct the payment by him out of the funds in his hands of the necessary disbursements of the petitioner, and of such a sum for his costs and counsel fees as it thinks reasonable; and it may, in its discretion, direct the committee to pay a sum not exceeding $50 and disbursements to the attorney for any adverse party." *Held,* that such section does not regulate the compensation of an attorney for services as between attorney and client, and the court has power to award such sum as seems reasonable to be paid out of the property of the person adjudged insane to the attorneys who defended him.

2. SAME—LIABILITY OF COMMITTEE—JUDGMENT—PARTIES.

The fact that upon an application made by an alleged insane person for leave to use her property to retain counsel, etc., in a proceeding to have her adjudged insane, the court allows $50 for counsel fees, is not binding on the attorneys who represent her on that motion, and does not prevent the enforcement of their claim for services in the main proceeding against the committee of her property.

Appeal from special term, New York county.

Application by William J. Hardy and William N. Kennedy for leave to bring an action against the committee of the property of an insane person to recover value of services rendered, expenses incurred, etc. From an order denying the application, petitioners appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

W. J. Hardy, for petitioners.
Charles E. Hotchkiss, for committee of property.
Charles J. Hardy, for committee of person.

McLAUGHLIN, J.   On the 26th of June, 1897, Mary A. Lucas
was arrested, upon a petition made by her son, and committed, under
the insanity act, to the Long Island Home at Amityville, N. Y.   A
few days later a proceeding de lunatico inquirendo was instituted,
and a trial entered upon, which continued until the 16th of July fol-
lowing, when the jury, not being able to agree, were discharged,
and another jury summoned.   The second trial was entered upon on
the 6th of August following, and on that day Mrs. Lucas made an
application to the court for leave, in resisting the proceeding then
pending, to use so much of her own property as might be necessary
to employ counsel, obtain medical experts, etc.   The court did not at
once act upon her application, and, before it did so, the second trial
terminated, and she was found to be incompetent to manage herself
or her property by an inquisition which was signed by 13 of the
19 jurors.   On the 24th of the following month the court disposed
of her application by an order which recited the finding of the jury,
and directed that she be allowed the sum of $50, which the committee
of her property (as soon as appointed) was directed to pay to her
counsel.   The petitioners, who had acted as her counsel throughout
the proceedings, refused to accept the sum thus allowed, and instead
made an application for an order either directing the committee of
her property to pay to them a certain sum for services rendered and
expenses incurred as her attorneys in defending the proceedings to
have her adjudged an incompetent person, or that they be permitted
to bring an action to establish the same.   Their application was
denied, and from the order thus made this appeal was taken.
   The question of allowance of costs in lunacy proceedings has many
times been before the court, but this is the first time, so far as we
are able to discover, that the power of the court in this respect has
been challenged.   The respondent insists that the only power which
the court has is that contained in section 2336 of the Code of Civil
Procedure.   We do not think this section of the Code is applicable
to the case here presented.   That section provides a general provi-
sion for the costs to be awarded in the proceeding to the attorney
for a party adverse to the petition, who has appeared in this proceed-
ing.   It does not attempt to regulate the compensation to be paid
to an attorney for services rendered as between attorney and client,
and there is no reason why one against whom proceedings under
the title are instituted should not have the right to the services of
counsel, and why such counsel should not be paid for such services
when rendered.   The most casual consideration of the record cannot
fail to impress one that a very serious question was presented as to
whether Mrs. Lucas was insane.   The first jury could not agree upon
that question, and the medical experts did not agree upon either

trial. Under such circumstances she was entitled·to the services of counsel, and for the services thus rendered and expenses incurred by them, acting in perfect good faith, she, or the committee of her property thereafter appointed, became legally and morally obligated to pay. It would be a hard and unreasonable construction of this statute to hold that one alleged to be insane—no matter how much property he may have—can only use, if ultimately found to be insane, the sum of $50 in defending the proceeding instituted to deprive him, not only of his liberty, but of the control of all his property. The section of the Code referred to was not intended to accomplish such result, and it cannot be so construed. It is important that an alleged lunatic should be afforded every reasonable opportunity to defend himself in the proceeding instituted to have him adjudged insane, and, if ultimately found to be insane, then the court has the power to award such sum as seems reasonable and right under the circumstances, payable out of his property, to the persons who render services·in defending him. In this way it is possible to prevent fraud and mistake. This seems to be the view taken in Carter v. Beckwith, 128 N. Y. 319, 28 N. E. 582. The order made upon Mrs. Lucas' application is in no way binding upon these petitioners. They were not parties·to, and had no connection with, that application, except as attorneys for her. They had no standing in court either to appeal from the order or to move for a modification of it. It is not, therefore, binding upon them, and does not prevent the enforcement of their claim against the committee of her property.

We think the order appealed from should be reversed, with $10 costs and disbursements, and the application granted, permitting the petitioners to bring an action against the committee of the property to enforce their claim. All concur.