## THEDFORD v. READE.

(Supreme Court, Appellate Term. December 13, 1898.)

1. INSANE PERSONS—NECESSARIES FOR WIFE—LIABILITY.

The wife of a lunatic was appointed as his committee, and directed to provide, out of her husband's estate, for her own as well as for his support. During her term as committee she bought coal of plaintiff for her home. During such time she received a considerable sum from her husband's estate and other sources, and also had some resources of her own. *Held*, that the husband, after his return to sanity, is not liable for the price of the coal, because of the creditor's failure to sustain the burden of showing that the wife was not otherwise provided for.

2. SAME.

A wife living apart from her husband by reason of the latter being confined in an insane asylum has presumably no authority to bind her husband even for necessaries.

Appeal from municipal court, borough of Manhattan, Tenth district.

Action by George W. Thedford against Robert L. Reade. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

J. G. Janeway, for appellant.
W. C. Relyea, for respondent.

GILDERSLEEVE, J. Previous to February 16, 1897, the defendant lived with his wife, Martha A. Reade, in a house, which he had given her as a wedding present, at No. 158 West Eighty-Fifth street, in this city. In 'the fall of the previous year, defendant or his said wife had ordered, for their family use in said house, 20 tons of coal of the plaintiff, for which defendant had paid. About said 16th day of February, 1897, defendant became afflicted with a mental illness, and left his home in this city for a sanitarium, to be there treated for his illness. He subsequently became insane, and on or about August 16, 1897, his wife was duly appointed committee of his person and property. The court specifically directed that the committee, Mrs. Reade, "out of the said estate [defendant's estate], or the rents, issues, and profits thereof, provide for the maintenance, sustenance, and support of the said Robert L. Reade and his family." The family of said Reade consisted of his wife alone, as they had no children. About September 10, 1897, while the defendant was in the insane asylum, Mrs. Reade ordered of plaintiff 19 tons of coal, which were delivered by the plaintiff at the said house, No. 158 West Eighty-Fifth street, where Mrs. Reade continued to live. There is nothing to show that plaintiff had any knowledge of the fact that defendant had become insane and was no longer living with his wife. Subsequent to the purchase of this coal, and during the winter of 1897–98, the wife of defendant received from some friends, who came to live with her, the sum of

$175, as appears from the report of the referee, hereafter mentioned, and annexed to the record; she also received $500 from the estate of her husband, and she realized about $3,500 by a mortgage on her house and furniture,—a considerable portion of which sums, however, appears to have been paid out for defendant's maintenance, and in settlement of his anterior debts. In November, 1897, as appears from the referee's report, the defendant was discharged from the asylum; and his wife thereafter duly accounted, as his committee, before a referee, whose report seems to have been filed on February 1, 1898. Some time in April, 1898, Mrs. Reade appears to have obtained her discharge as the committee of her husband. This claim of plaintiff for the coal, amounting to $108.50, was not submitted to the referee, for the reason, as Mrs. Reade testifies, that defendant, after his discharge from the asylum, promised to pay the bill. This action was brought in May, 1898. As to the value of the coal, no issue is raised. The defense is that defendant was a lunatic, and unable, by himself, or by his wife as his agent, to enter into a contract to purchase coal; that the coal was not necessary; and that Mrs. Reade had already had provision made for her, and had sufficient money to pay for the coal herself.

As we have seen, at the time of the purchase of the coal by the defendant's wife defendant's lunacy had been judicially determined, and his wife had been appointed the committee of his person and property. It will not, therefore, be contended that the defendant was capable of entering into a contract for the purchase of supplies for the maintenance of his family. The court had assumed the custody and control of his estate. See Carter v. Beckwith, 128 N. Y. 312, 28 N. E. 582. We do not think a liability of the defendant on the contract in question can be predicated upon the facts disclosed. It is urged that defendant's liability rests upon obligations imposed by the marital relations. It was upon this ground that the learned trial justice based his decision in favor of the plaintiff. We concede that mental incompetency does not relieve a husband, or his estate, from suitably providing for his family. If there is no provision for the maintenance of a wife during the lunacy of her husband, through a committee of his estate, or otherwise, she is authorized to pledge his credit for things necessary for her support. In Schwarting v. Bisland, 4 Misc. Rep. 534, 24 N. Y. Supp. 700, the rule, we believe, is correctly stated as follows, viz.:

"In order to warrant a recovery against the husband for goods furnished to his wife, it must be shown that the goods so furnished were suitable to the wife's position, and necessary to her maintenance, and that she was not otherwise provided for."

Admitting, for the convenience of argument, that plaintiff has met all requirements necessary to entitle him to maintain this action for the coal against defendant, except the important one that the wife was not otherwise provided for, can it be said that this indispensable requirement is established? We think not. It appears, as we have seen, that the court, in the order appointing a

committee, directed that Mrs. Reade should provide, out of the defendant's estate, for her own as well as for her husband's maintenance, sustenance, and support. During Mrs. Reade's term as committee of her husband, which covered the time of the purchase in question from the plaintiff, she received a considerable sum of money from the estate of her husband, and was in receipt of some money from persons who lived with her during this period. Moreover, it appears that she was not altogether without resources of her own. We are of opinion that the plaintiff has failed to sustain the burden imposed upon him, of establishing by a fair preponderance of evidence the essential fact that Mrs. Reade was not otherwise provided for, and that he was warranted in furnishing this coal to her on defendant's credit. Furthermore, it is by no means a necessary inference from the testimony that in the sale of the coal the plaintiff did give credit to the defendant. When Mrs. Reade ordered the coal, she was living apart from her husband, and prima facie, therefore, had no authority to bind defendant.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.