BRAUER v. LAWRENCE. (No. 6419.)

(Supreme Court, Appellate Division, First Department. December 11, 1914.)

1. TRIAL (§ 3*)—SEPARATE TRIALS OF ISSUES.

In an action on accounts stated, in which defendant counterclaimed for a cancellation of the accounts, where the facts relied upon in support of the counterclaim were available as a defense, a separate trial of the issues arising on the counterclaim before the trial of the issues arising on the complaint and answer was properly denied.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 6, 7; Dec. Dig. § 3.*]

2. ACCOUNT STATED (§ 7*)—CONDITIONS—TIME OF PAYMENT.

Where, when an account was stated, it was a condition of the debtor's assent to the account that it should not be collected at once, but from time to time, so as not to inconvenience her, or jeopardize her property, and subsequently, without any new consideration, she signed an indorsement on the account that it was thereby settled at the amount thereof, the conditions with respect to the terms of payment agreed upon when the account was first stated attached to the second statement thereof, and, in the absence of any showing that the facts essential to render the account due existed, there could be no recovery.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 41–49; Dec. Dig. § 7.*]

3. ACCOUNT STATED (§ 3*)—NECESSITY OF VALID INDEBTEDNESS.

It is essential to the validity of an account stated that there be a valid indebtedness.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. § 13; Dec. Dig. § 3.*]

4. INSANE PERSONS (§ 74*)—CONTRACTS—VALIDITY.

A person who had been adjudicated incompetent to manage her affairs by a judgment of the state of her residence was conclusively presumed incapable of contracting, and her contract of employment of attorneys was void; and hence their services did not constitute a valid indebtedness, which would support an account stated, though stated after the restoration of her property to her.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 126, 127; Dec. Dig. § 74.*]

5. INSANE PERSONS (§ 29*)—PROCEEDINGS—ALLOWANCE TO ATTORNEYS.

In a proceeding, by a person adjudged incompetent to manage her affairs in the state of her residence, to procure the discharge of the committee of her property in this state, the court, if satisfied that the pro-

ceedings were instituted and the services rendered in good faith, and that there was some apparent reasonable ground therefor, might have made an allowance to attorneys employed by her, though she was incompetent to employ them.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 42, 140, 150; Dec. Dig. § 29.*]

6. ACCOUNT STATED (§ 3*)—VALIDITY OF INDEBTEDNESS—MORAL OR EQUITABLE CLAIM.

If, as claimed, attorneys agreed to render services for an incompetent person for a specified amount, the rendition of the services did not give rise to a moral or equitable claim which would support an account stated for a greater amount than the agreed compensation; there being no consideration for the agreement, after the rendition of the services, to pay more than the agreed amount.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. § 13; Dec. Dig. § 3.*]

7. ATTORNEY AND CLIENT (§ 123*)—ACCOUNT STATED—BURDEN OF PROOF.

Where an account for services rendered by an attorney is stated after the rendition of the services, and while the relation of trust and confidence still exists, and the necessity for legal services and advice continues, the burden is on the attorney to show, particularly where the client's mental faculties are impaired, that no undue advantage was taken, and that the client, before assenting to the account, was fully informed with respect thereto, and of her rights in the premises, and that the account was fair.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 239–245, 248, 249; Dec. Dig. § 123.*]

8. ATTORNEY AND CLIENT (§ 123*)—ACCOUNT STATED—BURDEN OF PROOF.

In an action on an account stated for attorneys' services, evidence *held* insufficient to show any such termination of the relation of attorney and client, or reliance by the client on independent advice, as relieved plaintiff of the burden of showing that the account was fair, and that no undue advantage was taken of the client.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 239–245, 248, 249; Dec. Dig. § 123.*]

9. INSANE PERSONS (§ 79*)—CONTRACTS—AVOIDANCE—DEFENSES—ESTOPPEL.

A party was not precluded from questioning an account stated for legal services under a contract of employment made while she was incompetent by promising to pay it after her property was restored to her, and by not repudiating it for about 15 months.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 138, 141; Dec. Dig. § 79.*]

Appeal from Trial Term, New York County.

Action by Albert Brauer against Julia Watt Lawrence. From a judgment on a directed verdict for plaintiff, and from orders denying a new trial and denying defendant's motion for a separate trial of the issues arising on her counterclaim, she appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Frederick H. Sanborn, of New York City, for appellant.
George C. Holt, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J.   The action is on an assigned claim of Messrs. Kellogg & Rose, attorneys and counselors, on accounts stated for professional services.

[1] The counterclaim is for the cancellation of the accounts stated. No argument has been presented in support of the appeal from the order denying a trial of the issues arising on the counterclaim before the trial of the issues arising on the complaint and answer. Manifestly there is no merit in that appeal, for the facts relied upon in support of the counterclaim were available as a defense, and no other relief was required. That order should therefore be affirmed.

The name of the defendant formerly was Curtiss, but it was changed by her marriage to Lawrence. By a decree of the probate court of the district of Fairfield, Conn., the defendant was duly adjudged to be incompetent "by reason of intemperance and mental derangement," and "incapable of managing her affairs," on the 17th day of August, 1907, and conservators of her person and property were duly appointed there. They remained the lawful. custodians of her person and property until the 17th of June, 1912, when they were duly discharged by a decree of said court, and her property was restored to her. On the 7th of October, 1907, on due application by the Connecticut ·conservators, the Supreme Court of this state at Special Term duly appointed them a committee of her property here, the order being based on the Connecticut decree, and on the 6th of July, 1912, the conservators, after their discharge in Connecticut, were duly discharged here, and her property within this jurisdiction was thereupon restored to her.

An application in behalf of the defendant, made by the assignors, to vacate the order appointing the Connecticut conservators a committee of her property, was granted at Special Term, but reversed by this court, on the ground that she was a resident of Connecticut, and that the court in that state acquired jurisdiction, and· its decree was conclusive, and entitled to full faith and credit as if made here; and our decision was affirmed by the Court of Appeals. Matter of Curtiss, 134 App. Div. 547, 119 N. Y. Supp. 556; Id., 197 N. Y. 583, 91 N. E. 1111.

The assignors thereafter in her behalf, alleging her competency, applied for a commission de lunatice inquirendo here, and prayed for an order superseding the order of the Supreme Court appointing a committee, and discharging the committee, and restoring her property to her. An order was made at Special Term directing that a commission issue to inquire into her competency; but on appeal to this court by the conservators it was reversed, on the ground that the application should have been made in Connecticut, and that the Connecticut decree remained conclusive here as to her incompetency, while it stood unaffected there, so long as she remained a resident of that state; and our decision was affirmed on the same ground. Matter of Curtiss, 137 App. Div. 584, 122 N. Y. Supp. 468; Id., 199 N. Y. 36, 92 N. E. 396.

[2] The plaintiff pleads three accounts stated, and has recovered on all. The third is for $436.66 for services rendered after the discharge of her conservators, and it is conceded that plaintiff was entitled to recover on that. The other two were and are contested. The employment and rendition of the services and the advancement of moneys, for

which the first account is claimed to have been stated, were all during the period from June 29, 1909, to April 17, 1912, after defendant had been adjudged to be incompetent, and while she remained subject to the adjudication. The first account stated is alleged to have been stated on April 25, 1912, while defendant was still incompetent according to the decree and to have been again stated on July 26, 1912, after her disability had been removed. On the 18th of April, 1912, the attorneys presented to defendant in the presence of her husband a bill for $35,000 for services to April 17th, and for $1,791.40 for disbursements, and for $5,551.99 for cash advanced, aggregating $42,343.39, with a credit of $2,650, of which $2,500 was received as an allowance by the court in one or both of said proceedings instituted by them in New York. On the 25th of April the defendant and her husband had an interview with one of the attorneys. According to the testimony of the attorney he asked if they were satisfied with the bill, and "they said that they would like to have it less, but, if I thought it was all right, they would let it go," and thereupon he prepared a letter to himself approving the bill, showing a balance owing of $39,693.39, and defendant signed it. The husband of the defendant suggested the final sentence of the letter which is as follows:

"This letter is written and signed by me on the understanding that these amounts for fees and services shall not be collected or insisted upon at once on the restoration of my property, but from time to time out of my property and income, so as not to inconvenience me or to jeopardize my property."

On the 26th day of July, 1912, defendant, at the request of the attorneys and without any new consideration, signed the following indorsement on the bill:

"The above account is hereby settled at $39,693.59, having heretofore approved by me."

If this were a case for an account stated, the conditions with respect to the terms of payment agreed upon when the account was first stated attached to the second statement of it, and as there was no evidence showing the existence of the facts essential, under the first approval, to render it due, the recovery was not warranted.

[3-5] It is essential, however, to the validity of an account stated, that there be a valid indebtedness (Bauer v. Ambs, 144 App. Div. 274, 128 N. Y. Supp. 1024); and we think there was none here, for the reason that the defendant is conclusively presumed to have been incapable of contracting, and her contract of employment of the attorneys was therefore void (Carter v. Beckwith et al., 128 N. Y. 312, 28 N. E. 582). Some of the services, disbursements, and advances—it does not appear what part—were rendered and expended in endeavoring to procure the discharge of the conservators and of the committee. The court in those proceedings, if satisfied that the proceedings were instituted and the services rendered in good faith and that there was some apparent reasonable ground therefor, might have made an allowance (Carter v. Beckwith et al., supra, and Matter of Larner, 170 N. Y. 7, 62 N. E. 761); and if the proceedings have terminated without any allowance, and without a decision as to whether an allowance

should be made, it may be, since the court in those proceedings has now lost jurisdiction over the property, as in Carter v. Beckwith et al., supra, that there is a claim for the reasonable value of the services enforceable by action; but that question has not been fully argued, and we do not deem it necessary to decide it now.

[6] Nor can the recovery be sustained on the theory of an account stated with respect to a moral or equitable claim. The defendant pleaded, and offered to show, an agreement in advance for the rendition of all the services rendered in procuring the discharge of the conservators and of the committee for $7,500, and the delivery of a note therefor later on; but on plaintiff's objection the evidence was excluded, and a broad ruling was made to the effect that the account stated was controlling, and could be impeached only for fraud or mistake, which the court ruled was not alleged, and denied a motion to amend by alleging them, and the defendant was given an exception thereto. The court, on like objection, excluded evidence offered to show that the statement of the account was procured by duress. If there was an agreement to render the services for $7,500, there was no consideration for defendant obligating her herself by an account stated, *after* the rendition of the services, for a greater amount.

[7, 8] We are also of opinion that where, as here, an account for services rendered is stated between an attorney and client after the rendition of the services, and while the relation of trust and confidence exists, and the necessity for legal services and advice still continues, there is a burden on the attorney of showing, at least, and particularly with a client whose mental faculties are impaired, that no undue advantage was taken, and that the client, before assenting to the account, was fully informed with respect thereto, and of her rights in the premises, and that the account was fair. Of this no evidence was offered by plaintiff, and the court excluded evidence offered with respect thereto on the cross-examination of one of the assignors.

Counsel for respondent contends that this rule is not applicable here, for the reason that the relation of attorney and client had then practically terminated, and that the client did not rely solely on the advice of plaintiff's assignors, but had the advice of her husband, who, however, was not a lawyer, and that she was about to have another attorney take charge of her affairs; but it appears that plaintiff's assignors continued to represent the defendant to some extent. There is no evidence that she took independent advice, other than the testimony of one of plaintiff's assignors that she told him that one Brown, who originally brought her to plaintiff's assignors—but whether he was an attorney does not appear—had told her that plaintiff's assignors "had agreed to do it all for $7,500"; but the attorney testified that he subsequently informed her that Brown had denied so stating to her. It appears that one of plaintiff's assignors, on April 18th, at the time the bill was presented, and one week before she approved it, suggested, after advising her that she was competent to approve the bills, that she "look into the matter, and take such advice as she should see fit, and pass upon the value" of the bill. We are of opinion that these facts do not render the rule inapplicable. There was no express plea of

fraud or mistake, but there was a sufficient plea of duress to require the reception of the evidence offered tending to show duress in procuring the account stated.

[9] There is no force in the contention that defendant is precluded from questioning the account stated by subsequently promising to pay it, and by not repudiating it during the period of some 15 months before the action was brought.

These views are also applicable to the second account stated, for part of it was for services rendered, disbursements, and advances made while defendant was incompetent, and the account stated did not show what part was for such services and advances.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abiue the event. All concur.