OPINION OF THE COURT
Lewis R. Friedman, J.
This motion by Isaac Kokhba, a coconservator, seeks to distribute to himself, the administrator of the estate of the deceased conservatee, nearly all of the assets of the estate. The coconservator, Robert L. Geltzer, Esq., opposes the application on various procedural and substantive grounds. This motion raises serious issues that were not resolved in the cases under the statute previously governing conservators and committees of incompetents (Mental Hygiene Law former arts 77, 78) or the statute governing guardians (Mental Hygiene Law art 81).
After trial this court appointed two coconservators for Elizabeth Elefant by order ultimately signed April 1, 1993. Ms. Elefant died on June 19, 1994. Movant, without annexing documentation, asserts that he is the administrator of the estate of Ms. Elefant duly qualified in the Surrogate’s Court, Bronx County, as well as Ms. Elefant’s only distributee. The estate amounts to over $1,000,000. Movant contends that there are estate taxes which must be paid on Ms. Elefant’s *267 estate as well as other, unspecified expenses. Movant wants to manage the assets, in his role as a fiduciary of Ms. Elefant’s estate and pay the "expenses”. He argues that the delay attendant in having this court approve a final account of the conservators will subject the estate to penalties by the taxing authorities and otherwise result in "prejudice”.
Objector contends that the notice of motion was not served on all those interested in the matter, that movant after the conservatee’s death improperly withdrew funds for his own benefit from the coconservator’s accounts, and that there is no basis for the release of funds to movant prior to this court’s approval of an account. Since movant has made no effort to account, objector has forwarded a draft of a proposed accounting to movant for review. Objector offers various proposals to avoid penalties to the estate.
The procedural questions presented here will trouble courts for the next several years in dealing with the change in the statutory structure governing cases such as the one at bar. In 1992, the Legislature adopted article 81 of the Mental Hygiene Law as a new regime to govern all proceedings for the appointment and regulation of guardians for incapacitated persons (L 1992, ch 698). Former article 77, relating to conservators, and article 78, relating to committees for incompetents, were repealed. The legislation had an effective date of April 1, 1993. Section 4 (b) of chapter 698 (as amended by L 1993, ch 32, § 17) provides that "[u]nless the court deems it impracticable, such proceedings [those commenced prior to April 1, 1993] shall otherwise be governed by all other provisions of article 81 of the mental hygiene law.” This motion must, therefore, be treated as one made pursuant to article 81. However, there is no statutory authority in that article for the relief sought here. The motion has some of the aspects of different forms of relief: a motion for leave to resign as a guardian (Mental Hygiene Law § 81.37 [a]), for a discharge of the guardian (Mental Hygiene Law § 81.36 [a] [3]), or for leave to file a final or interim "report,” the new term for an account (Mental Hygiene Law § 81.33). While none of those statutes provides for assistance in the circumstances at bar, the same procedure is required in each of them — the movant must serve notice "upon the persons entitled to notice pursuant to paragraph three of subdivision (c) of section 81.16 of this article.” (Mental Hygiene Law § 81.33 [c]; § 81.36 [c].) One of the new requirements under article 81 is that the order appointing a guardian must "identify all persons entitled to notice of all *268 further proceedings.” (Mental Hygiene Law § 81.16 [c] [3].) The instant order, as with all prearticle 81 orders, contains no such provision. Therefore, the court finds compliance with article 81 "impracticable” and will look to prior law.
Under former article 77 of the Mental Hygiene Law notice of filing an account after the conservatee had died had to be made on an executor or administrator if one had been appointed. "If the executor or administrator and the conservator are the same person, notice shall be served upon the persons who would be entitled to notice under the surrogate’s court procedure act on a petition for settlement of his account as executor or administrator.” (Mental Hygiene Law former § 77.31 [c].) Further the court practice traditionally directed service of notice of filing of an account upon all persons having an interest in the property of the conservatee, including known creditors of the conservatorship.
This application was made by notice of motion served solely on the coconservator. That is patently insufficient. Movant failed to notify the known major creditors of the conservatorship, such as the home in which Ms. Elefant resided during her last days, and the Federal, State and city agencies which had provided services for her prior to the discovery of the major assets. Movant also failed to notify the surety on his bond. The service here would clearly be insufficient under the SCPA, since an accounting party must serve a number of specified persons including creditors and the surety on the bond (see, SCPA 2210). Indeed, SCPA 2210 (10) also appears to require notice to all persons interested in the deceased’s estate even though the coconservator would be accounting primarily to himself as administrator of the estate of the deceased (see, Matter of United States Trust Co., 71 Misc 2d 996, 997; Matter of Snyder, 54 Misc 2d 695, 697).
In light of the uncertainty of who was entitled to notice of this motion, movant should have submitted to this court an appropriate order to show cause, providing for service on those persons he thought interested in the matter. Although the intent of Mental Hygiene Law § 81.16 (3) (c) was to avoid an independent evaluation of who is required to be served with any postappointment application (see, L Rev Commn Comments to § 81.16, reprinted in McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.16, 1995 Pocket Part, at 331-332), such an evaluation is required in every case involving a prearticle 81 order of appointment.
*269 Based on a review of the circumstances this court concludes that any application for an order authorizing payments such as sought here must be made on notice to the surety on the guardian’s bond. Indeed, unless the appointing court has included in the order appointing a guardian language requiring notice on the surety of accounting proceedings an inquiry may be required in every case involving a deceased incapacitated person, even though the order of appointment is made under section 81.16. In this case the court finds that movant failed to notify the surety on his bond, clearly a person entitled to notice (cf., Matter of Frankenheim, 207 Misc 969, 970 [interpreting former Civil Practice Act § 1383, one of the progenitors of Mental Hygiene Law § 78.29, dealing with accountings by committees]). The court does not believe that the creditors are necessary for this type of proceeding since their claim for services performed for the deceased may be proved in the Surrogate’s Court proceeding.
Since it appears likely that movant will obtain consent from his surety for some of the relief sought on this motion, the court will deal with the substantive issues presented. It is clear that the conservators here have no authority other than to "wind up” the conservatee’s estate, provide for the conservatee’s burial, account and then turn the balance remaining in their hands to the persons directed in the order approving the final accounting (Matter of Glener, 202 AD2d 503; Forcino v Miele, 122 AD2d 191, 194; Carter v Beckwith, 128 NY 312, 320; Mental Hygiene Law § 81.20 [a] [6] [iii]; § 81.33 [c]; § 81.36 [e]). Movant contends that the process of accounting is too time consuming and that there are unspecified expenses of the estate that have to be met. The court is not impressed by movant’s prediction of how long it will take for the accounting, which is allegedly nearly complete, to be approved by the court. Indeed more than eight months have elapsed since Ms. Elefant’s death and no accounting has yet been submitted. The law as applied in this IAS Part is sufficiently flexible that reasonable and appropriate requests can be expedited. Movant may well be correct in his conclusion that some delays are inherent in the statutory procedure for examining an account (Mental Hygiene Law § 81.33 [d], [e]), and verifying that a filed account is in proper form and adequately explains that the fiduciaries properly managed the conservatorship; that is part of the process that is required to insure this court that the fiduciaries appointed by the court have performed their duties correctly. The objector raises a serious question about whether *270 movant is seeking to "grab” funds for his own use prematurely. The allegations here present substantial proof to support that conclusion. In addition it is important to realize that this court is not concerned that the attorney handling the estate has not yet been paid. Given the size of the estate, over $1,000,000, there is no likelihood that the counsel fees incurred by movant in his capacity as administrator will not be paid in due course. Other than estate taxes, it is hard to envision what other "expenses” have been incurred in this estate that require immediate resolution. Under the circumstances the court is not inclined to give movant immediate access to the deceased conservatee’s funds for his own use.
Movant contends that the court has power to release nearly all of the funds to him as administrator and to reserve a sufficient amount for the expenses of winding up the conservatorship. He relies on Matter of Grout (83 Hun 25 [1st Dept 1894]) and Matter of Ferris (86 App Div 559 [1st Dept 1903], affd 176 NY 607). Those cases interpreted the statutory regime for incompetents which governed long prior to the adoption of article 81 of the Mental Hygiene Law. Former Code of Civil Procedure § 2344 provided that after the death of an incompetent "the power of the committee ceases; and the property of the decedent must be administered and disposed of, as if a committee had not been appointed.” That was consistent with the language of 2 Revised Statutes 55, §24, yet an older version of the law (see, Carter v Beckwith, supra). Matter of Grout determined only that section 2344 did not deprive the court of authority to complete an accounting of the committee, while Matter of Ferris held that death did not deprive the court of power to complete an already commenced proceeding to determine the fees and expenses of the committee. This court notes that the language of section 2344 was modified when it was adopted as section 1383 of the former Civil Practice Act and was not retained at all when section 1383 was incorporated in the Mental Hygiene Law ultimately becoming former section 78.29 which governed proceedings for final accountings for committees. (Section 78.29 of that statute was the model for section 77.29 which governed conservator-ships.) No trace of the section 2344 language which suggests a turnover of assets by operation of law remains in the current Mental Hygiene Law. The case law interpreting section 2344 is of no value in dealing with a totally different statutory scheme.
The coconservators may present to this court a stipulation *271 signed by both coconservators and by movant in his capacity as administrator providing for the payment of specific amounts directly to the taxing authorities, with the usual provision for repayment in the event of a refund of those amounts to the administrator, if the stipulation is consented to by the surety on the bond. The court will "so order” such a stipulation. In that manner the court may retain control of the assets until there has been an accounting and the essential demands of the taxing authorities have been met. Also this permits the amounts to be properly treated in the final account. This is consistent with usual Surrogate’s Court practice and was the procedure used in Matter of Ferris (supra), where the trial court had retained sufficient funds to pay for the expenses and turned the balance over to the executor. Of course Matter of Ferris only provided general guidance since in that case there was a different statutory scheme and the only issue was the proper fees of the committee.
The motion is denied, without prejudice to submission of a stipulation conforming to this decision.