OPINION OF THE COURT
Renee R. Roth, S.
Incident to this proceeding to settle her final accounting, the conservator for her recently deceased ward, Tilly Baron, asks the court to determine whether she may retain her ward’s as *767 sets pending settlement of the account despite the request for turnover by Chase Manhattan Bank, the preliminary executor of Ms. Baron’s will. Neither the statutes that govern guardianship nor case law provides any guidance as to which fiduciary is entitled to hold decedent’s assets during such interim period.
It is noted that probate will be delayed here because testatrix and her brother had mistakenly signed the other’s will. Indeed, the conservator was appointed by this court more than 11 years ago during the will contest in the estate of Ms. Baron’s brother. During the conservator’s tenure, the value of the ward’s assets increased from less than $2 million to more than $10 million.
Both fiduciaries agree that only one of them may now be responsible for administering the assets controlled by the conservator at the time of her ward’s death. The conservator contends that, although her authority terminated on her ward’s death (Matter of Glener, 202 AD2d 503), she is nonetheless responsible for maintaining the assets until this court discharges her from office. The Bank, however, argues that its appointment as personal representative of decedent’s estate carries the duty as well as the authority to marshal decedent’s assets and to otherwise attend to all aspects of the estate’s administration.
The preliminary executor was appointed under the SCPA and is controlled by its provisions. The conservator, on the other hand, was appointed under then article 77 of the Mental Hygiene Law, which has since been replaced by article 81 of the Mental Hygiene Law (L 1992, ch 698). All conservatorship appointments have remained in effect despite the repeal of article 77, but section 4 (b) of chapter 698 of the Laws of 1992 (as amended by L 1993, ch 32, § 17) provides that, “[u]nless the court deems it impracticable [conservatorships] shall otherwise be governed by” article 81.
Although the SCPA and the Mental Hygiene Law thus govern these fiduciaries, there is no provision in either statute that specifically identifies the point at which a fiduciary whose ward has died must surrender responsibility for the ward’s assets to the fiduciary appointed for the deceased ward’s estate. The time of transfer is important also in fixing the period in which each fiduciary is accountable and to whom.
It is first noted that the SCPA provides without exception for the appointment of a personal representative whenever a decedent leaves assets or liabilities. In other words, the statute contains no provision dispensing with such an appointment in the case of a decedent who was already being served by a fidu *768 ciary at her death — however well such fiduciary may have served her ward and however well she might continue to serve if allowed to do so. SCPA articles 9 through 14 instead clearly contemplate appointment of a fiduciary uniquely charged with meeting the special needs of a decedent’s estate and particularly charged with responsibilities to the persons having a stake in that estate. This suggests that the duties of an executor or administrator may not be carried out indirectly through the continued administration of a fiduciary earlier appointed to protect the decedent’s interests in her lifetime who may not necessarily be required to account to the same persons, i.e., the ultimate beneficiaries of the conservatee’s estate.
Furthermore, there is nothing in article 81 that provides that a conservator or guardian continues to act on behalf of the estate after the ward’s death except for the direction to the guardian (or conservator) to pay for the ward’s funeral by using estate assets in his or her keeping (Mental Hygiene Law § 81.36 [e]). This authority to meet an exigent circumstance tends to suggest, as is confirmed by decision, that such fiduciary is otherwise barred from entering into new transactions after her ward has died (Carter v Beckworth, 128 NY 312, 320; Matter of Glener, supra [conservator has no authority to settle action commenced after ward’s death]; Forcino v Miele, 122 AD2d 191, 194; Matter of Barto, 231 NYS2d 789, 791; Matter of Niego, 137 NYS2d 50, 51; Matter of Keeling, 148 Misc 798, 800; see, Matter of Lambert, 207 Misc 307, 309 [conservator had no authority to pay claims which arose after ward’s death]).
The logical extension of the above line of cases is that the conservator should surrender the assets to the personal representative of the deceased ward’s estate (“the person legally entitled to it”) as directed in Mental Hygiene Law § 81.20 (a) (6) (v), but such statute does not resolve the instant issue since it is silent as to when the turnover should be made and who is to determine its timing.
Two cases that continued the conservator’s authority beyond the death of the ward warrant mention. The first is Matter of Elefant (164 Misc 2d 265), where a coconservator sought an order directing that the conservatorship assets be released to him as sole administrator of the deceased ward’s estate. The court refused to issue such an order. Although Elefant might appear to be direct precedent, it is distinguishable from the present matter in several respects. For one thing, the movant in Elefant had failed to serve necessary parties and had thus from the outset doomed his application. For another, although *769 movant claimed to be the administrator of decedent’s estate, he had failed to document such status, a failure that the court pointedly noted. For another, the record suggested that movant might have tried to evade an accounting after diverting some of the conservatorship assets to his own use. Furthermore, movant’s request that he be allowed to attend to the assets as administrator was somewhat academic, since he already held the assets as coconservator. In sum, the court did not have to resolve the question of the authority of the conservator vis-avis the administrator with respect to marshaling the deceased conservatee’s assets and paying the estate’s administration expenses. To the extent dictum in Elefant suggests to the contrary, this court respectfully disagrees.
In the second case, Matter of Siracusano (167 Misc 2d 130), a temporary guardian had been appointed for a ward whose major asset was a seriously underinsured Stradivarius that had been stolen prior to the guardian’s appointment. The theft was being investigated with the assistance of the guardian when the ward died. To compound the problem, it was expected that the appointment of a personal representative for decedent’s estate would for various reasons be delayed. The court therefore authorized the guardian to continue to act in order to bridge a perilous gap between the death of the ward and the appointment of a new fiduciary. Such precedent has no application here.
Based upon the foregoing, the court concludes that, absent special circumstances, the authority of a conservator or guardian terminates immediately upon the ward’s death and such fiduciary must turn over the ward’s assets to the duly appointed personal representative of such ward’s estate once such fiduciary has been appointed. Clearly, the decree granting letters to the personal representative should so direct (i.e., the conservator or guardian should be made a party to the proceeding in which such decree issues and thus be subject to such a direction). In this case, an order has been signed directing the conservator to turn over to the Bank all estate assets in her possession except for a reserve of $1 million pending disposition of her final accounting.
Finally, a copy of this decision shall be sent to the Law Revision Commission to study the appropriateness of legislation that would facilitate the orderly turnover of the assets of a *770 deceased incapacitated person, define the roles of the various fiduciaries and identify the persons to whom each is accountable.