NANCY M. TIFFANY, Appellee, v. HENRY L. TIFFANY, Appellant.

1. **Divorce:** CRUEL AND INHUMAN TREATMENT: INSANITY. Cruel and inhuman treatment of a wife by the husband, which is the result of insanity, will not entitle the wife to a divorce upon such ground.

2. **Practice in the Supreme Court:** RECORD: EVIDENCE AS TO INCIDENTAL RELIEF. The right of the appellant to have his appeal from a decree of the district court, granting a divorce in such case, considered in the supreme court, *held* not to be affected by the failure to present in the record the evidence upon which the decree as to alimony was based.

3. ———: INSANITY OF DEFENDANT: PROSECUTION OF APPEAL. After the petition of the plaintiff was filed in the district court, the defendant was adjudged insane, and a guardian *ad litem* appointed in this action. *Held*, that the defendant was not incapable by reason of his insanity of taking an appeal from the judgment of the district court, and that an objection that the appeal was not prosecuted by the guardian *ad litem* would not be entertained when urged only after the time when such objection could have been removed by requiring the guardian *ad litem* to appear in the case, or by the appointment of another one.

4. **Appeal:** RIGHT OF: PERFORMANCE OF JUDGMENT. The decree of the district court directed one W., the guardian of the estate of the defendant, to pay to the plaintiff and her attorneys certain sums therein named, which order was complied with. It not appearing that W. was a party to the action, *held*, that the performance of the decree by W. was not binding upon the defendant nor the guardian *ad litem* so as to cut off their right of appeal.

*Appeal from Hamilton District Court.*—HON. J. L. STEVENS, Judge.

THURSDAY, DECEMBER 17, 1891.

ACTION in chancery for a divorce and alimony. There was a decree granting the relief prayed for by the plaintiff. The defendant appeals.—*Reversed.*

*James P. Davis*, for appellant.

*Martin & Wambach*, for appellee.

BECK, C. J.—I. The plaintiff asks for divorce and alimony on the statutory ground that the defendant is guilty of such inhuman treatment as to endanger her life. The petition alleges that the defendant has personal and real estate, and the plaintiff is without means for the prosecution of this suit, and for the support of herself and the minor children of the parties, whose

custody she prays may be given to her. The petition was filed December 15, 1888. On the ninth of February following, the defendant was adjudged insane in proper proceedings had before the commissioners of insanity of Hamilton county, where the parties resided and the suit was commenced. On the fifteenth of February, 1889, W. J. Cavil, as guardian *ad litem*, filed an answer to the petition, and on the first of the May following an answer to the amended petition, denying the allegations of the petition, and alleging that the defendant, during all the time, as shown in the petition, in which the acts and conduct complained of are averred to have occurred, was insane, and alleging the adjudication of insanity, as just stated.

II. The evidence clearly establishes the fact of the defendant's insanity during the time of the occurrences upon which the charge of inhuman treatment is based. The medical expert testimony, as well as the preponderance of other evidence, satisfactorily leads to this conclusion. Dr. Hill, whose evidence is corroborated by other medical experts, gives this testimony:

"I am a physician, and superintendent of the Iowa Hospital of the Insane, at Independence. Have been such superintendent seven and one-half years, and for seven years previous to becoming superintendent I was first assistant physician of that institution. Henry L. Tiffany, the defendant, is now a patient in the Iowa Hospital for the Insane at Independence. I received him for custody and treatment on the thirteenth day of February, 1889. He is now in a weak, somewhat confused, and unstable mental state, and I consider him insane. As to his present symptoms, Mr. Tiffany is somewhat careless in his personal appearance and habits. He is absent-minded, and his memory is impaired. His faculties are quite confused at times. He is quite hypochondriacal, and more or less emotional. I consider this man a case of primary *dementia*, characterized by an insidious and gradual loss of some of the faculties of

the mind, and leaving others to a great extent impaired.
This form of insanity may be free from marked and
constant delusions, and such is the case with this man.
On his admission to the hospital Mr. Tiffany was suf-
fering from cerebral congestion, and this condition of
the brain continues.   I think this disease is rather an
inflammation of the membranes than an inflammation
of the brain itself.   I believe its condition is chronic
and permanent.   I believe the disease which affects the
mind of this man has been developed gradually, and
that it began years ago.   The disease of which Mr.
Tiffany is now suffering originated in the brain and
surrounding membranes.   It has extended to some
extent into the spinal cord, and has produced the con-
dition which may be called 'sclerosis.'   I believe some
of the nervous fibers of the spinal cord are diseased,
and that such disease impairs the functions of locomo-
tion.   I am of the opinion that Mr. Tiffany has not
been thoroughly sound in mind for a number of years,
and base this opinion upon the history I have received
of this case from the certificate made by Dr. Medbury,
by information acquired from the sheriff who brought
him to the hospital, and upon statements made by the
patient himself. . I believe that the injury which Tif-
fany received to his head in Keokuk, several years ago,
contributed to his mental condition.   The causes which
produce the condition from which Mr. Tiffany is now
suffering are hereditary predisposition, injury to the
head, excessive venery, and domestic infelicity.   I
believe that Mr. Tiffany is permanently impaired, both
·in body and mind.; that he is incapable of self-support,
of transacting important business; also that his mental
disturbance is aggravated by undertaking responsible
duties, and by circumstances which irritate his sensitive
disposition.   *Cross-examination:*   Mr. Tiffany has been
under my observation ever since he came to the hos-
pital for treatment.   My examination has not been wholly
objective, but, since this patient is able to describe his

own feelings and state his history, the examination has also been subjective. Mr. Tiffany attributes his present physical and mental condition largely, if not wholly, to the injury he received to his head several years ago, although he admits that he may have inherited a tendency towards nervous diseases and insanity from his parents and other ancestors. I base my opinion as to the length of time that Mr. Tiffany has been in an unsound condition of mind partly on the history which I have received of his case, and partly on the form of physical and mental disease from which he is suffering. Excessive sexual indulgence with lewd women may have produced the nervous system and mind from which this man was suffering when admitted to the asylum. I believe this man to be insane, and that his mental derangement is due to *meningitis* and disease of the brain and spinal cord. These conditions doubtless existed for years, and are not likely to be cured by medical treatment. Mr. Tiffany is insane to a considerable extent on almost all subjects. On the other hand, his mind exhibits more or less enfeeblement, no matter upon what subject he converses. I believe the mind of Henry L. Tiffany is permanently impaired."

The evidence is not only corroborated by the testimony of other medical experts, but is supported by other witnesses and facts established upon the trial. The adjudication by the commissioners of insanity at least raises a presumption of the defendant's insanity. *Ockendon v. Barnes,* 43 Iowa, 615.

III. The plaintiff does not ask a divorce upon the direct ground of the defendant's insanity, but on the ground of inhuman treatment, based upon acts and conduct of the defendant. Now, if these acts and conduct originated in a diseased mind, and were the result of insanity, it is plain that the plaintiff bases her claim for a divorce on the defendant's insanity,—the primary source and direct cause of the acts and conduct complained of in the plaintiff's petition. That these acts

and conduct originated in the defendant's insane con-dition cannot be doubted, for they are common and usual manifestations of the diseased mental condition described by the testimony of Dr. Hill above quoted; and, in further support of this conclusion, it may be remarked that the evidence shows that the manifesta-tions of insanity by the acts complained of occurred within the time fixed by Dr. Hill within which the disease originated.

IV. Insanity is not a ground for divorce in this state. *Wertz v. Wertz*, 43 Iowa, 534. As the impair-

1. DIVORCE: cruel and inhuman treatment: insanity.

ment of the mind wrought by disease, physical injury or old age, which directly leads to the commission of crimes, leaves the offender in the condition of irresponsibility, and relieves him of punishment, so the same causes which lead to offenses and acts which, in the case of one of sound mind, are the grounds of divorce would in law demand that he be held not responsible for such acts, which, therefore, would not be grounds of divorce. The marital relations impose upon each spouse the duty of care and protection of the other when in disease. If disease impairs the mind, the obligation is not discharged, but is rather increased in force, for a diseased mind requires even more care for one so afflicted than a simple physical ailment, which does not affect the mind. Those nervous diseases and old age, which by the overthrow of the will and self-control, and the impairment of the mind, producing distorted and false views of the acts and conduct of a spouse or others of the family, and rendering the subject incapable of self-protection, would indeed leave him in a pitiable condi-tion if these afflictions would justify his wife in casting him off, and gaining from the law exemption from the obligations of the marriage contract imposing the duty of kindness, tenderness and care. If such were the law, it would bring the heaviest affliction and burden upon women, who have, added to the general diseases

of humanity, peculiar diseases of the body and nerves, which produce impairment of the mind and will. But the spirit of Christian civilization of the day will admit nothing of the kind, and the law will enforce marital obligations in harmony with that spirit. It will not permit the diseased and insane spouse to be abandoned or discarded by the husband or wife, as the old, helpless and imbecile of families among some savage and barbarous peoples are consigned to death by starvation or violence. We concur in the opinion that, as the acts and conduct of the defendant were the result of insanity, they do not constitute grounds upon which the plaintiff may be divorced from the defendant. It is our conclusion that the petition of the plaintiff ought to be dismissed.

V. Counsel for the plaintiff insist that the abstract and transcript fail to present all the evidence upon 2. PRACTICE in the supreme court: record: evidence as to incidental relief. which the case was decided in the court below, and in support of this claim they file a certificate of the judge showing that the evidence upon which the decree as to alimony was based is not in the transcript or abstract. But the completeness of the defendant's abstract is only questioned upon this ground so certified by the judge. It may be assumed that the evidence as to the plaintiff's claim for alimony is not before us. This does not affect our conclusions, for, if the plaintiff is not entitled to a divorce, she cannot recover alimony. Therefore, in view of the conclusion we reach, that the plaintiff's petition ought to be dismissed, the evidence as to alimony given in the court below can cut no figure; for under no state of proof could the alimony be allowed. The defendant's motion to strike from the files of this court the certificate of the judge showing the evidence on the question of alimony need not be considered; for, with or without its consideration, the result of our decision would be the same.

VI. Plaintiff insists that, as the appeal is not prosecuted by the defendant's guardian *ad litem*, it should be dismissed. Without determining whether this be a ground for dismissing the appeal, we are of the opinion that, as it was first urged upon the submission of the cause on printed argument after the time when the objections could have been removed by requiring the guardian *ad litem* to appear in the case, or by the appointment of another one, we will not now entertain it. We are not of the opinion that the defendant himself, or his attorney acting for him, is incapable of taking the appeal; that we are to regard the appeal as not having been taken; and that, therefore, we have no jurisdiction of the case. Insanity is a disability which an opposing party in a suit against him cannot urge to defeat the right of the insane party or do him injustice. *Allen v. Berryhill*, 27 Iowa, 534, 537. And surely this court of equity, the supreme guardian of the insane, will not, when the defendant comes before it in his own name as an appellant, bringing the record in the case, dismiss his appeal, and affirm the decree, after we find upon the record that the plaintiff's petition has no merit in it, and ought to be dismissed. This court ought to consider the appeal to it for justice made by all, whether sane or insane; and, when it is found that injustice has been done, it ought to find some way to correct the wrong. As we find the appeal pending in this court, and no objection thereto brought to our attention, excepting upon the submission on printed argument, after opportunity to correct the objection had passed, and as it is prosecuted by counsel, we shall presume that it was taken under the authority of the guardian *ad litem*, if that were necessary to authorize it, and that counsel for the defendant were duly authorized to appear in the cause in this court, as they have done. The plaintiff also appearing here by counsel, and recognizing the

*Marginal note:* 3. ——: insanity of defendant: prosecution of appeal.

fact of the appeal, it cannot be doubted that the appeal is before us, and, for reasons we have stated, the decree of the district court ought to be reversed thereon.

VII. The decree of the district court directed W. S. Worthington, who is designated as guardian of the defendant, to pay to the plaintiff the sum allowed her, to the attorneys of the plaintiff a specified sum, and to the guardian *ad litem* of the defendant and his attorney, jointly, another sum, and also the costs of the suit. The plaintiff has filed a certificate of the clerk showing the payment of these sums, and now claims that, as the defendant has performed the decree of the court below, the appeal must be dismissed. But the payment was not made by the defendant or by his guardian *ad litem*. Surely, the decree could not be performed by one not a party to the suit, so as to bind the defendant, and cut off his right to have it performed. The payments, to have that effect, should have been made by the party to the suit, the defendant, or his guardian *ad litem*. Worthington is named in the decree as the defendant's guardian. It is not shown that he appeared in the case, or that he was a party thereto. Surely, the court had no jurisdiction to cut off the defendant's right and the authority of the guardian *ad litem* by an order imposing a duty upon Worthington to pay money in the action in which he was not a party. The order, not being made in the exercise of jurisdiction, was void, and should not have been obeyed by the guardian. It affords him no protection for the payment of the money.

The decree of the court below will be reversed, and a decree entered in this court dismissing plaintiff's petition. REVERSED.

4. APPEAL: right of: performance of judgment.