*In re* FRESHOUR'S ESTATE.

LYON *v.* MINOR.

1. INSANE PERSONS—CONTRACTS, IMPLIED—ATTORNEY'S SERVICES AS NECESSARIES—ESTATES OF DECEDENTS.

Where decedent had been confined in an asylum for insane persons by proceedings brought by her guardian and the petition was not signed by any one authorized by statute (Act No. 100, Pub. Acts 1909 [2 How. Stat. (2d Ed.) § 3656]), her estate was liable for services of an attorney rendered in good faith, at the request of decedent and her friends, for the purpose of liberating her from confinement, although she

died before receiving any benefit from the services of claimant who was perfecting an appeal from an adverse order in habeas corpus proceedings; the services of an attorney being considered as necessaries for which the law would imply a contract to pay; it was not necessary to petition the probate court for leave to commence proceedings.

2. SAME—TRIAL—CHARGE—CONDUCT OF COURT.
No prejudicial error occurred in the charge of the court which instructed the jury that claimant was a reputable attorney: the word reputable as used in the instruction meant merely that claimant was a regular lawyer, a member of the bar.

Error to Montcalm; Davis, J. Submitted November 20, 1912. (Docket No. 92.) Decided March 20, 1913.

Leman A. Lyon presented a claim against the estate of Lucena A. Freshour, deceased, for services rendered as attorney. The claim was disallowed and claimant appealed to the circuit court. Judgment for plaintiff. M. Jay Minor, administrator, brings error. Affirmed.

*F. A. Miller* and *R. A. Hawley*, for appellant.
*Scully & Davis* and *Leman A. Lyon*, for appellee.

KUHN, J. The appellee in this cause is an attorney, and the subject-matter of the controversy is a claim which he filed for professional services rendered for Lucena A. Freshour, now deceased. Mrs. Freshour was a married woman, but had been divorced from her husband. The claim was disallowed by the judge of probate at the hearing on claims. On appeal taken to the circuit court, the case was tried before a jury and a verdict had in favor of the claimant for the sum of $89.41, and judgment was entered accordingly.

On February 8, 1909, a petition was filed by Geo. H. Lester, an uncle of said deceased, alleging incompetency of the deceased and praying for the appointment of a guardian. Oneella Lester, an aunt, was appointed guardian and qualified as such on March 30, 1909. On August

17, 1909, the guardian filed her petition in the probate court, setting forth that said incompetent person was an epileptic and needed treatment in an institution for feeble-minded and epileptic persons. An order was made appointing physicians to examine the incompetent, and, upon their reports being filed, the judge of probate says he thinks he made an order sending Mrs. Freshour to the Home of the Feeble-Minded at Lapeer, but that he could not get her into that institution because of its crowded condition. On the 31st of August, 1909, Oneella Lester, as guardian, filed a petition in the probate court alleging, among other things, that Mrs. Freshour was an insane person and in need of asylum treatment, and praying that she be admitted to the Traverse City Asylum for the Insane as a private patient. The same physicians who had examined her upon the previous hearing were appointed to examine her with reference to this petition, and in due course of time filed their certificates showing that Mrs. Freshour was an insane person and needed treatment in an asylum. Thereupon, an order was made by the judge of probate adjudging Mrs. Freshour insane and a fit person for care and treatment in an asylum and that she should be admitted to the asylum at Traverse City as a private patient. Mrs. Freshour did not appear at any of these proceedings by attorney and was taken to the asylum at Traverse City, where she remained until April, 1910.

It appears from the testimony of Mrs. Lester that, at the time of the hearing in the probate court as to the insanity of Mrs. Freshour, she represented to the incompetent that she was being taken to the probate court for the purpose of ascertaining whether or not she could remarry her divorced husband. It is claimed by claimant that, due to the efforts made by him in her behalf, Mrs. Freshour was released by the asylum authorities in April, 1910, and taken to St. Mary's Hospital in Grand Rapids on account of blood poisoning in her hand.

Mrs. Freshour died on the 9th of August, 1910, leaving no last will and testament, and an estate consisting of real

and personal property amounting to $7,250 in value. Her sole heir at law is her nephew, M. Jay Minor, who was appointed as administrator of her estate and is the appellant in this cause.

The attention of the claimant and appellee was first brought to the proceedings set out in the record and the condition of Mrs. Freshour in the latter part of September or early in October, 1909, by friends of Mrs. Freshour, among whom were the supervisor of Bloomer township and his wife, who lived on the farm adjoining her home. These friends brought to the claimant a number of letters written by Mrs. Freshour to them from the asylum at Traverse City, where she was then confined, complaining of her retention there and requesting them to interest themselves in her behalf. Claimant declined for some time to take up the matter, but finally entered upon an investigation, after being informed of several letters Mrs. Freshour had written Mrs. Bartholomew, one of the friends, requesting her to go and see him and ascertain what he could do to get her released from the asylum. This investigation disclosed that the proceedings by which Mrs. Freshour was confined were absolutely void for the reason that the petition to have her adjudged insane was made by one not authorized by law to make it.

Act No. 100, Public Acts of 1909, provides as follows:

"The father, mother, husband, wife, brother, sister or child of a person alleged to be insane, or the sheriff, or any superintendent of the poor, or supervisor of any township, or any peace officer within the county in which the alleged insane person resides or may be, may petition the probate court of said county for an order directing the admission of said person to an asylum or institution for the care of the insane," etc.

The legislature undoubtedly excluded the guardians from those authorized to make this petition, because mentally incompetent persons under guardianship may become, by reason of their infirmity, a great care upon their guardians without having reached the condition which

the law defines as insanity, and the legislature apparently contemplated that there might be an attempt on the part of guardians to relieve themselves of the care of their wards by attempting to commit them to some institution.

It is claimed by Mr. Lyon that he prepared a petition for leave to appeal from the order adjudging Mrs. Freshour insane, but that he did not present it to the court for the reason that he considered a writ of habeas corpus more expeditious in securing her release and for some other reasons. Habeas corpus proceedings were instituted but dismissed by the circuit court on the hearing. A petition was also filed in the probate court by Mrs. Freshour requesting the court to adjudge that she was no longer insane and that she be declared restored to soundness of mind. This petition was heard and dismissed by the court at the hearing, which was attended by Mr. Lyon who represented Mrs. Freshour. Various items of expense for traveling, etc., were incurred, and the total amount claimed for services and expenses was $106.46, which was reduced by two payments of $10 and $5, respectively, to $91.46, which was the amount for which a claim was presented to the probate court.

The questions raised on this appeal are stated by counsel for appellant as follows:

"(1) The objections to the reception in evidence and the exceptions covering the same.

"(2) Refusal of the court to direct a verdict in favor of the administrator.

"(3) The instruction of the court to the jury that 'the plaintiff in this case is a reputable lawyer, member of this bar.'

"(4) The argumentative nature of the charge of the court as a whole."

The trial judge charged the jury, in part, as follows:

"The plaintiff in this case is a reputable lawyer, member of this bar, and had a right, if acting in good faith and upon circumstances that would lead a reasonable man to believe the woman's condition is such that she should not be confined in an asylum, if upon the examination of

the records he acted in good faith believing the proceedings were illegal, then he had the right to act and use his best judgment and best skill as a lawyer to aid her to obtain her liberty from that institution and have set aside what he believed was an illegal order.  He claims to have examined the records in this case and found that a petition had been filed and she was adjudged an epileptic, for which the law does not allow people to be sent to an asylum, unless the reason of that person is shown by the testimony to be undermined and unsound, there being another place for the detention of feeble-minded people.  He claims the letters he considered tended to show she was not insane, that is of unsound mind, and that she was begging to get out; that acting in good faith he performed certain services which tended to her benefit.  The claim is made that finally she did obtain her liberty through the efforts in part of Mr. Lyon; that is his claim; that later papers were filed in this court in regard to habeas corpus writ asked for and process obtained, but that that was dismissed; that later efforts were being made to review all of the orders of the probate court and this court; and that she died before the matter was fully completed.  I say to you, as matter of law, she had a right to make her appeal; and though she may have been insane, yet, if the plaintiff was acting in good faith looking to her relief on account of her illegal restraint, he would have the right to act for her and use his best efforts.  It would be his duty after assuming to act at all to take every proper legal step towards looking up evidence and looking up the law, making examination of the records to ascertain the legality or illegality of the processes or judgments whereby she had been sent to the institution, and, if he found in his opinion that she was suffering from improper or illegal restraint, he had a duty to perform under those circumstances of using his best judgment and skill in obtaining her liberty for her, and, so acting, no matter whether successful in whole or not, he would be entitled to receive from her estate what the services were reasonably worth."

It is the contention of counsel for appellant that the claimant in this cause acted without any authority whatsoever; that Mrs. Freshour was incompetent to make any contract; that it was claimant's duty to lay the facts before the probate court of Montcalm county and ask · for leave to institute proceedings; and that, no such proceed-

ings having been taken by herself or the guardian of the incompetent person, he cannot recover.

It is an old and well-established rule of law that, when necessaries have been furnished to a person, it matters not whether the recipient is mentally competent or otherwise. If there is no express agreement to pay for the necessaries, an implied agreement arises. The rule is stated in 4 Cyc. p. 993, as follows:

. "The services of an attorney will usually be considered as necessaries, and a promise to pay for them will be implied when rendered in a proceeding personal to an infant or other person incapable of entering into a contract, such as an habitual drunkard or an insane man."

It is claimed in this cause that the attorney is not entitled to compensation because his efforts did not result to the benefit of Mrs. Freshour. We hold the rule to be that an attorney is entitled to compensation for his services, whether those services have been beneficial to his client or not, so long as the services have been faithfully and intelligently performed.

The circuit judge did not err in submitting the case to the jury upon the theory outlined in his charge, and the real question at issue was: Did the claimant act in good faith and give the client the benefit of his best intelligence, industry and effort?

Counsel for appellant insist that the court had no right to charge the jury, as a matter of fact, that the appellee is a reputable lawyer, and that by using this language the court sustained the character of the appellee, as a fact, and that in this case the character and reputation of the appellee as a man or as a lawyer was not involved, as his character as a lawyer or as a man had not been assailed. It is the contention of the appellee that the word "reputable" as used cannot be said to mean more than this, that the claimant was a duly accredited member of the Montcalm county bar, and as a practicing attorney was entitled to his compensation, if the other essential facts were proven. We are of the opinion that

the word " reputable," as used in this connection and as generally understood by the profession, does not mean more than if the court had said that he was a regular lawyer. We do not believe that the language used did, or could, mislead or influence the jury. An examination of the whole charge of the court satisfies us that it was a full, fair, and comprehensive statement of the law of the case and not subject to the criticism made by counsel for appellant, that it was argumentative in its nature.

We have examined the assignments of error with reference to the reception of testimony, and find no prejudicial error committed by the court with reference thereto.

The judgment of the trial court is therefore affirmed, with costs.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.