IN RE ESTATE OF AUGUST OST.

No. 40702.

FEBRUARY 17, 1931.

*T. J. Drees* and *Ralph Maclean*, for appellant.

*Gray & Gray*, for appellee.

WAGNER, J.—On September 24, 1930, the ward, August Ost, by his attorneys, T. J. Drees and Ralph Maclean, filed in the guardianship proceeding an application verified by one of said attorneys. It is alleged in said application, in substance, as follows: That, in the year 1925, Clara Ost, wife of August Ost, filed a petition alleging that the said August Ost was a person of unsound mind, and asking that she be appointed his guardian; that thereafter, proceedings were had in said matter in court, which resulted in her appointment as the guardian of the person and property of this applicant; that said Clara Ost duly qualified as said guardian and took possession of the property of said ward; that, at the time of her appointment as guardian, this applicant was the owner of 80 acres of land, and had funds on deposit in banks amounting to several thousand dollars; that, in the same year (1925), the said Clara Ost filed in the office of the clerk of the district court an information, duly verified, alleging that the said August Ost is insane, and such proceedings were had thereafter as resulted in the confinement of the said August Ost in the state hospital for the insane at Cherokee, where he has since been and is now confined.

"That this petitioner desires to apply for orders vacating such guardianship and restoring him to the management of his property and to secure his freedom from imprisonment in said hospital, and that he has employed the attorneys named above. That, in order to properly bring such action and conduct them as they should be, it will be necessary for the said attorneys to employ alienists of standing, to examine this applicant and to make investigation into the facts upon which said applications will be based, and to incur expenses for costs and otherwise. Wherefore this petitioner prays that an order be made on his said guardian * * * that she be required to furnish to counsel for this applicant a reasonable sum of money to be used by them for the payment to themselves of a retainer and a reasonable

per diem for services rendered and to be rendered in bringing and conducting said actions and to secure the services of alienists and to pay the expenses for necessary investigations of facts therein, such sum to be not less than $1,000.''

Such application was set down for hearing, and notice served upon the guardian as prescribed by the court. The guardian appeared and filed a motion, in which she asks that the court require the attorneys who have filed the aforesaid application to produce and prove their authority to act in behalf of said insane person.

In response to said motion, the attorneys filed the affidavits of Drees, one of said attorneys, and Mrs. Berner, sister of the ward. In the affidavit of the sister, she states, in substance, that she was present at the Cherokee hospital in the latter part of June, 1930, when Drees and her brother, August·Ost, had a conversation; that her brother (the ward) informed Drees at that time that he was not insane, and that he desired to bring an action or actions to establish his sanity, and requested said attorney to bring said actions and to secure such legal ''assistants'' as he might deem necessary, and to secure the services of such alienists as might be necessary to secure his release from the asylum; that her brother informed the attorney that he had no money, but that his guardian was in possession of several thousand dollars of his money, and that he owned 80 acres of Calhoun County land; that her associations with her brother had been rather close, and that she had observed his actions and his conversation, not only at the time when he was adjudged insane, but since; and that, at and before the time when he was adjudged insane, he talked like a sick man, but not like an insane man; that she has frequently seen him since the time of his confinement in the hospital, and has observed his physical and mental condition; that physically he has improved; and that, ever since he has been confined, when she has visited him she has talked to him about his condition, and has had general conversations with him; that ''in these conversations he has always said that he is not insane;'' and that his mental operations seemed to her to be normal.

In the affidavit of Drees, the attorney, he states, in substance, that, on or about the 30th day of June, 1930, he went to the hospital for the insane at Cherokee, and there saw August

Ost, the ward; that Ost told him that he desired to bring actions to secure his release from the hospital and the determination by a court that he was a person of sound mind, and requested and authorized him to bring such actions as might be necessary or advisable to secure this result; that Ost informed him that he had no money, and that his guardian was hostile to him, and would not bring nor cause such actions to be brought; that, in his opinion, based on this one interview, said ward is mentally sound.

The guardian moved to dismiss the application, for reasons which may be summarized as follows: That no satisfactory showing has been made of the authority of the attorneys to prosecute this proceeding; that the application on its face shows that it is an attempt to deplete the assets of the estate, as Section 3571, Code, 1927, prescribes an inexpensive way for determining the truth as to the sanity of a person confined in the asylum; that the application on its face shows that the interest of the said ward or the interest of the state or the interest of the ward's estate is not sought by an impartial hearing to ascertain the mere truth of the matter, but for the purpose of causing the estate of the ward to be involved in expensive litigation; that the application on its face shows that it is intended to involve said estate in expert fees and large attorney fees, without any warrant under the statute, especially since the statute provides an inexpensive method by which anyone interested may obtain the truth as to the confinement; that no part of the application should be granted for attorneys' fees or costs until an investigation is had under Section 3571, Code, 1927; that, if it were possible for the court to grant such an application as made in this case on behalf of the person in the insane asylum, the practice would be obnoxious, in that the same would be used in each and every case of persons confined in the hospital for the insane, as a means of creating work and labor for attorneys, which would deplete and destroy the assets of wards of the state, which the court is in duty bound to protect.

The court dismissed the application, refusing to grant the order therein prayed. It is shown by the abstract that, on October 3, 1930, the guardian filed a report, which discloses that she is in possession of 80 acres of land belonging to the ward, and has cash (certificates of deposit in banks) amounting to $3,400.

The question for our determination is: Did the court err in dismissing the application and refusing the order? It will be observed that the ward, August Ost, has been judicially declared to be of unsound mind in the guardianship proceeding; it will also be observed that he has been found to be insane by the commissioners of insanity of the county of his legal settlement, and committed to the hospital for the insane for treatment, where he is now confined. He is, therefore, presumed to be of unsound mind. See *Hazen v. Donahoe,* 208 Iowa 582; *Weber v. Chicago, R. I. & P. R. Co.,* 175 Iowa 358, 360; *In re Will of Knox,* 123 Iowa 24; *Tiffany v. Tiffany,* 84 Iowa 122; 29 Corpus Juris 105, 106; 22 Corpus Juris 86, 87.

In so far as a termination of the guardianship is concerned, our statutory law provides that, at any time not less than six months after the appointment of the guardian, a person under guardianship may apply to the court, or any judge thereof, by petition, alleging that he is no longer a proper subject thereof, and asking that the guardianship be terminated; whereupon, notice shall be served upon the guardian in such manner and for such length of time as the court or judge may direct, requiring the guardian to answer the same at or before a time fixed therein; and if the guardian shall file an answer denying the allegations of the petition, the court or judge shall try the issue, unless the petitioner demand a jury trial. See Sections 12623–12625, Code, 1927. It is improbable, if, indeed, not impossible, that the ward could succeed in terminating the guardianship as long as he is in confinement in the hospital for the insane as an insane person. It is, therefore, apparent that the primary object sought is the procurement of a discharge for Ost from the asylum. For this purpose, two remedies appear to be open to the one confined: the one being habeas corpus (see Section 3577, Code, 1927), and the other, a statutory remedy provided for by Sections 3571 to 3576, inclusive, Code, 1927. Under said sections of the statute, a sworn complaint, alleging that a person is not insane, and is unjustly deprived of his liberty in any hospital in the state, may be filed by any person with the clerk of the district court of the county in which such person is confined, or of the county in which such person has a legal settlement, and thereupon, a judge of said court shall appoint a commission of not more than three persons, to inquire into the

truth of said allegations. One of said commissioners shall be a physician, and if additional commissioners are appointed, one of such commissioners shall be a lawyer. The commission shall at once proceed to the place where the person is confined, and make a thorough and discreet examination, for the purpose of determining the truth of said allegations, and shall promptly make report of its findings to said judge in writing. Said report shall be accompanied by a written statement of the case, signed by the superintendent of the asylum. Further testimony may be heard, and if, on the report of the committee and the statement of the superintendent of the asylum and the hearing of any testimony offered, the judge shall find that such person is sane, he shall order his discharge. If, on the other hand, he shall find him insane, he shall so state, and authorize his continued detention. The finding and order of the judge, with the report and other papers, shall be filed in the office of the clerk of the court where the complaint was filed. The clerk shall enter a memorandum thereof on his records, and forthwith notify the superintendent of the hospital for the insane of the finding and order of the judge, and the superintendent shall carry out the order. The commissioners shall be entitled to their necessary expenses and a reasonable compensation, to be allowed by the judge, who shall certify the same to the auditor of state, who shall thereupon draw the proper warrants on any funds in the state treasury not otherwise appropriated; but if the judge should find that the complaint was filed without probable cause, then he shall order that the applicant pay the costs and expenses. It will thus be observed that, while the remedy of habeas corpus is open to the one confined, yet, as hereinbefore stated, the other statutory remedy, which is comparatively inexpensive, and which is for the express purpose of determining the truth of the matter, is open to the one confined or to anyone else who may see fit to file a sworn complaint alleging that the one confined is not insane, and is unjustly deprived of his liberty. Ost is presumed to be insane. Moreover, it is made the duty of the board of control and of the superintendent of the asylum to grant a discharge to any person who has regained his sanity. See Sections 3500, 3501, Code, 1927. There is a presumption that officers having a duty to perform have performed it. It is true that such presumption, as well as the presumption of insanity by

reason of the previous adjudication, is rebuttable. The application asks that the guardian be required to pay for services which Ost, who has been adjudicated to be insane and of unsound mind, has requested them to render. Since Ost is under guardianship, a contract between him and his attorneys could not be binding upon the guardian. See *Reeves v. Hunter*, 185 Iowa 958. But the appellant contends that services such as mentioned in the application, rendered an insane person, are necessaries, within the meaning of the law; that the contracting party can collect from the estate of the ward, by reason of an implied contract, the reasonable value of services rendered; and that the right to recover is not necessarily dependent upon the success of the litigation, where the services have been faithfully, honestly, and intelligently performed,—citing 32 Corpus Juris 741; *Rautenkranz v. Plummer*, 75 Ind. App. 269 (130 N. E. 435); *Fitzpatrick's Committee v. Dundon*, 179 Ky. 784 (201 S. W. 339); *Ferguson v. Fitze* (Tex. Civ. App.), 173 S. W. 500; *Jones v. Meyer* (Tex. Civ. App.), 248 S. W. 777; *In re Yarlotte's Guardianship*, 133 Okla. 3 (270 Pac. 321). Also, see *In re Freshour's Estate*, 174 Mich. 114 (140 N. W. 517, Ann. Cas. 1915A 726, and note); *Carter v. Beckwith*, 128 N. Y. 312 (28 N. E. 582); 32 Corpus Juris 711. If we assume, without deciding, that the attorneys and alienists, under the doctrine announced in these authorities, could recover from the estate of the ward for services rendered, this is beside the question before the court, as, in the instant case, no services have been rendered. According to the affidavits of Drees and the sister of the ward, the attorney (Drees) was authorized by the ward, in so far as he was capable of giving authority, to bring an action or actions to establish his sanity. The attorneys have brought no such action as they were thus directed to bring, but instead, filed the foregoing application in the guardianship proceeding.

Guardians must manage the affairs of their wards, under proper orders of the court or a judge thereof. See Sections 12581 and 12613, Code, 1927. The property of the ward is *in custodia legis*. While the property belongs to the ward, and should be used for his benefit, the court should not authorize the expenditure of the funds for what appears to be expensive and useless litigation. The court is necessarily vested with large

discretion in matters of this kind. As said by the court in *Carter v. Beckwith*, 128 N. Y. 312 (28 N. E. 582):

"The language of the chancellor in 1 Paige 582 commends itself for wisdom and equity, 'In every case of this kind,' he remarks, 'the court must exercise a sound discretion, regulated by the particular circumstances, so that, while the party proceeded against is not deprived of the means of protecting his legal rights, the property which is necessary for the support of himself and family shall not be unnecessarily wasted in fruitless litigation.''

What showing has the applicant made, that the expenditure of the money to the attorneys, as requested, would be beneficial in procuring the liberty of the ward or the possession of his property? He is presumed to be insane. What showing is there of any reasonable ground for belief that he is not insane? One of the attorneys,—a nonexpert,—who asks to have his fee paid, as aforesaid, states in his affidavit that, as a result of his one interview with the ward, it is his opinion that he is mentally sound; and the sister—a nonexpert—states in her affidavit that his mental operations seemed to her to be normal. It will be noted that the sister states that, at and before the time when her brother was adjudged insane, he talked like a sick man, but not like an insane man. The fair inference from her affidavit is that, at that time, he was sane; and this only controverts the finding of the commissioners of insanity and the adjudication of the court.

It is sufficient to say that, under the record, abuse of the large discretion vested in the court is not shown. We have considered all grounds urged for reversal, and the judgment of the district court is hereby affirmed.—*Affirmed.*

FAVILLE, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.